UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

| | |
|---|---|
| O.D.R.,<br><br>    *Plaintiff*,<br><br>v.<br><br>Kristi Noem*, Secretary of Homeland Security*, Todd Lyons, *acting Director of U.S. Immigration and Customs Enforcement*, Kenneth Genalo, *acting Executive Associate Director of Enforcement and Removal Operations*, Nikita Baker, *acting Director of the ICE Baltimore Field Office*, and Pamela Bondi, *Attorney General of the United States*<br><br>    *Defendants*. | Case No. ----------------------------- |

## INTRODUCTION

Six years ago, Plaintiff O.D.R. ("Mr. D.R.") won an order from an Immigration Judge ("IJ") granting him withholding of removal under the Convention against Torture. That order prohibited Defendants from removing Mr. D.R. to Honduras—only to Honduras—because it was more likely than not that Mr. D.R. would face torture there. Defendants could have appealed when the IJ issued the order, but chose not to. They could have attempted to remove Mr. D.R. to *any* of the other 190 or so other countries in the world, but chose not to. They could have moved to reopen Mr. D.R.'s case *any time* in the past six years, but chose not to. The one thing Defendants could not do, however, is remove Mr. D.R. to Honduras. That is precisely what they did.

In doing so, Defendants ripped Mr. D.R. from his life partner, R.B.M.M. ("Ms. M.M."), their grandchildren, and their community, placing him squarely in danger of persecution, torture, and potentially death. Such a flagrant violation of international and domestic law cannot stand. Defendants' actions shock the conscience and they call for immediate judicial resolution.

1

**JURISDICTION & VENUE**

1. This Court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. §§ 2201, 2202 (Declaratory Judgment Act), 28 U.S.C. § 1361 (Mandamus Act), and because the individual Defendants are United States officials. 28 U.S.C. § 1346(a)(2).

2. The Court has authority to enter a declaratory judgment and to provide temporary, preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure, 28 U.S.C. §§ 2201–2202, the All Writs Act, and the Court's inherent equitable powers.

3. Venue is proper in this District because Mr. D.R. resided in Baltimore, Maryland for nine years before his unlawful *refoulement* to Honduras; each Defendant is an agency or officer of the United States sued in her or his individual capacity. 28 U.S.C. § 1391(e)(1). Furthermore, Mr. D.R. was detained by Immigration and Customs Enforcement ("ICE") in Baltimore, Maryland when he was attending his scheduled ICE check-in on May 16, 2025.

**PARTIES**

4. Plaintiff O.D.R. is a native and citizen of Honduras who lived in Baltimore, Maryland. Despite his protection from removal to Honduras under the Convention Against Torture ("CAT"), and in violation of a judicial order, Defendants have deported him to Honduras.

5. Defendant Kristi Noem is the Secretary of the U.S. Department of Homeland Security ("DHS"). DHS oversees ICE, which is responsible for administering and enforcing the immigration laws.

6. Defendant Todd Lyons is the acting Director of ICE. ICE is the federal agency responsible for all immigration enforcement in the United States.

7. Defendant Kenneth Genalo is the acting Executive Associate Director of ICE Enforcement and Removal Operations ("ERO"). ERO is the ICE office that carries out arrests and removals of noncitizens.

8. Defendant Nikita Baker is the acting Director of the ICE Baltimore Field Office. ICE's Baltimore office arrested and detained Mr. D.R. before transferring him to Louisiana.

9. Defendant Pamela Bondi is the Attorney General of the United States. She oversees the immigration court system, which is housed within the Executive Office for Immigration Review ("EOIR") and includes all immigration judges ("IJs") and the Board of Immigration Appeals ("BIA"). IJs decide removal cases and applications for relief, such as the one granted to Mr. D.R.

10. All government defendants are sued in their official capacities.

## LEGAL BACKGROUND

12. Noncitizens in immigration removal proceedings can seek three main forms of relief based on their fear of returning to their home country: asylum, withholding of removal under the Immigration and Nationality Act ("INA"), and Convention against Torture ("CAT") relief. Noncitizens may be ineligible for asylum for several reasons, including failure to apply within one year of entering the United States. *See* 8 U.S.C. § 1158(a)(2). There are fewer restrictions on eligibility for withholding of removal under the INA, *id.* § 1231(b)(3)(B)(iii), and no restrictions on eligibility for CAT relief and protection. 8 C.F.R. § 1208.16. There are two forms of relief under CAT: withholding and deferral. *Id*. Both are mandatory, non-discretionary forms of relief. *Id.*; *see also Moncrieffe v. Holder*, 569 U.S. 184, 187 n.1, 133 S. Ct. 1678, 185 L.Ed.2d 727 (2013).

13. On June 26, 1987, the United Nations CAT treaty came into force. The CAT includes the foundational principle of *non-refoulement*, which prohibits a state from returning an

individual to a country where there are substantial grounds to believe they would be at risk of torture. Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, art. 3 ¶ 1, 1465 U.N.T.S. 85; 23 I.L.M. 1027 (1984). Under President Reagan, the United States signed the CAT on April 18, 1988. After ratifying the CAT on October 21, 1994, the U.S. became a full party with the CAT entering into force on November 20, 1994. Congress subsequently passed legislation implementing U.S. obligations under the CAT. *See* Foreign Affairs Reform and Restructuring Act ("FARRA") of 1998, Pub. L. No. 105-227, Div. G., Title XXII, § 2242, 112 Stat. 2681, 2681–823, codified as note to 8 U.S.C.A. § 1231. In March 1999, the Department of Justice then implemented CAT protections into its regulations at 8 C.F.R. § 1208.16.

14. Because the United States ratified the CAT and Congress passed the required legislation to execute the CAT in domestic law, the duties in the CAT are fully and legally binding on the United States as a state party, including the *non-refoulement* obligation.[1] Federal agencies are therefore required to respect U.S. treaty obligations, including the obligations under the CAT. Exec. Order No. 13,107, 63 Fed. Reg. 68991 (Dec. 10, 1998).

15. For an IJ to grant withholding under the CAT, the noncitizen must prove that he is "more likely than not . . . to be tortured" if he were to be removed to the designated country. 8 C.F.R. § 1208.16(c)(2). Consistent with the fact that CAT relief is meant to remain available when someone faces torture but doesn't qualify for other forms of relief, CAT protection carries a much

---

[1] Notably, while the Reagan administration had initially relieved the United States entirely from the *non-refoulement* obligation under Article 3 of the CAT, the reservation was deleted by the Bush administration. Peder van W. Magee, Note, The United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment: The Bush Administration's Stance on Torture, 25 Geo. Wash. J. Int'l L. & Econ. 807, 824 (1992). Therefore, Article 3's prohibition on *refoulement* is fully in effect and binding on the United States.

higher evidentiary standard than asylum, requiring the person to show they face an over 50% likelihood of torture, as opposed to demonstrating a 10% chance of persecution for an asylum grant. As of 2018—the most recent year for which full statistics are available—only 1.66% of applicants were granted withholding of removal under the CAT, and only 0.25% of applicants were granted deferral under the CAT.[2]

16. When an IJ grants a noncitizen withholding under the CAT, the IJ issues a removal order and simultaneously withholds that order with respect to the country or countries for which the noncitizen demonstrated a sufficient risk of torture. *See Johnson v. Guzman Chavez*, 141 S. Ct. 2271, 2283 (2021). There are no exceptions to this rule—ICE cannot remove an individual to a designated country after a judge grants CAT protection as to that country.

17. Once CAT relief is granted, either party has the right to appeal that decision to the BIA within 30 days. *See* 8 C.F.R. § 1003.38(b). If both parties waive appeal or neither party appeals within the 30-day period, as in this case, the CAT grant and the accompanying removal order become administratively final. *See* 8 C.F.R. § 1241.1. Absent DHS moving to reopen the removal proceedings before the IJ and proving that the noncitizen no longer qualifies for withholding under the CAT, the order stands and may not be terminated. *See* 8 C.F.R. § 1208.24(f). While the order stands, DHS retains the authority to remove the noncitizen to another country authorized by the statute, unless the noncitizen also demonstrates a likelihood of persecution or torture in that third country. *See* 8 C.F.R. §§ 208.16(f), 1208.16(f), 1240.12(d); 8 U.S.C. § 1231(b)(2).

---

[2] *See* Dept. of Justice, Executive Office of Immigration Review, Statistical Yearbook 2018, at 30 (2018), https://www.justice.gov/eoir/file/1198896/download.

18. Notably, CAT protection does not confer permanent status or open a pathway for recipients to adjust status or apply for citizenship. Indeed, nearly the only benefit CAT recipients can apply for is an employment authorization document ("EAD"). *See* 8 CFR § 274a.12(a)(10) (EAD category for individuals granted withholding of removal under the CAT); 8 CFR § 274a.12 (c)(18) (EAD category for individuals granted deferral of removal under the CAT). Therefore, the CAT is primarily—and nearly exclusively—a benefit of *non-refoulement*. Without certainty that the U.S. government will continue to uphold its domestic and international obligation to not *refoul* individuals with CAT protection, the CAT, the FARRA, and all the associated implementing regulations are rendered hollow and utterly worthless.

19. Furthermore, all other forms of fear-based relief—including asylum and withholding of removal under the INA—are based on the same fundamental principle of *non-refoulement*, wherein individuals cannot be returned to countries where they face the requisite risk of persecution or torture. *See* 8 U.S.C. § 1158(b)(1)(A) (asylum); 8 C.F.R. § 208.16(b) (withholding of removal under the INA). Like CAT protection, asylum and withholding of removal under the INA carry associated safeguard proceedings that ensure that recipients of these forms of relief are not stripped of relief or wrongfully deported without the requisite processes. *See e.g.* 8 C.F.R. § 1208.24 (regulating the termination of asylum or withholding). Allowing agencies to evade regulatory processes and *refoul* individuals to countries where they face persecution and torture opens the door to a broad and dangerous slippery slope of domestic legal and treaty violations and due process erosion for the vulnerable populations who have sought—and been granted—humanitarian protections by the U.S. government.

## FACTS

*Mr. D.R.'s CAT Protection*

20. Mr. D.R. is a citizen of Honduras and no other country. Mr. D.R. is not a member of, and has no affiliation with, any criminal or street gang. He has no criminal history and has never been charged with any crimes in the United States, Honduras, or any other country.

21. Mr. D.R. has entered the United States twice. He first entered the country in 2005 and was deported in 2014. Mr. D.R. lived in Baltimore during those nine intervening years. During those years, Mr. D.R. met his partner, Ms. M.M. They began living together, and Mr. D.R. began helping to raise Ms. M.M.'s grandchildren.

22. At the time of his deportation in 2014 and during the years prior, Mr. D.R. did not fear being returned to Honduras.

23. On the day Mr. D.R. landed in Honduras in May 2014, three MS-13 members approached him at a San Pedro Sula bus station. They threatened to kill him.

24. Mr. D.R. fled to his hometown, a rural farming community far from San Pedro Sula but close to the border of El Salvador. MS-13 members soon began appearing in his neighborhood, asking for him by name.

25. Fearing for his life, Mr. D.R. and his cousin Walter decided to travel to the United States. An MS-13 member, one Mr. D.R. recognized from the bus station, followed the two through Honduras and Guatemala. Mr. D.R. and Walter crossed from Guatemala to Mexico in July 2014.

26. Near the Mexican border, Mr. D.R. and Walter met Luis Alberto Zuniga, who offered to help guide Mr. D.R. and Walter to the U.S. border. Unbeknownst to Mr. D.R. and Walter, Mr. Zuniga was a member of the Zetas Cartel.

27. Mr. D.R., Walter, Mr. Zuniga, and other migrants began their travels to the U.S. border by train. On the first night of the journey, though, a group of eight to ten MS-13 members

armed with guns and machetes stopped the train. They held the migrants hostage and pulled a small group of people aside, including Mr. Zuniga and Mr. D.R. The MS-13 members claimed that Mr. D.R. was working for Mr. Zuniga, and thus for the Zetas.

28. When Mr. D.R. and Mr. Zuniga denied working together and any gang involvement on Mr. D.R.'s part, the MS-13 members beat Mr. D.R. with a machete. They left him unconscious and bleeding on the train car floor. They killed Mr. Zuniga, along with a few others in the train car.

29. Mr. D.R. was unconscious for six or seven hours after this attack. He still suffers memory issues and loss of consciousness because of it.

30. When Mr. D.R. awoke the following morning and made it to the next train stop, the Zetas cartel arrived. The Zetas kidnapped Mr. D.R. and the other migrants. They photographed and interrogated their captives about the massacre the day before, and when they were done, they extorted their families for ransom money. Mr. D.R.'s ordeal with the Zetas lasted over a month, during which he was held captive by armed guards.

31. Both MS-13 and the Zetas cartel have Mr. D.R.'s full name, hometown, and family information. The latter has his photo. They continue to threaten his family.

32. MS-13 periodically calls Mr. D.R.'s family to threaten them and him. One call Mr. D.R.'s mother received was so gruesome that she fainted; she required treatment at a clinic for the cardiac stress.

33. Mr. D.R. presented all of this information to an IJ while in removal proceedings in 2019. He supported his case with declarations from family and friends, a declaration from an eyewitness to the massacre, information about both gangs indicating that they murder former associates and threats as a matter of course, and photos of the scars he still bears from being beaten

with a machete. He presented additional evidence establishing a credible fear that the Honduran government would not only fail to protect him but, perhaps, assist the gangs. They have done so before.

34. The IJ granted Mr. D.R. withholding of removal under the CAT on May 9, 2019, and DHS did not appeal the order.

35. After winning his case, Mr. D.R. was released from ICE custody on an Order of Supervision ("OSUP"). Between his release in 2019 and May 2025, Mr. D.R. complied with the terms of his OSUP, lived with Ms. M.M. in Maryland, and continued to help raise their grandchildren.

*Sudden Re-Detention and Removal to Honduras*

36. Between 2019 and 2025, Mr. D.R. attended every one of his regularly scheduled check-ins with ICE. He was not convicted of any crimes, neither did he otherwise violate the terms of his OSUP.

37. Mr. D.R. attended his regularly scheduled check-in at the Baltimore Field Office on May 16, 2025. However, without any notice and without giving him any reasoning, ICE detained Mr. D.R. at that check-in and held him in the Baltimore Hold Rooms for approximately one day. While detained at the Baltimore Hold Rooms, Mr. D.R. was not given adequate food, and the food that was provided caused him severe stomach pain. From Baltimore, ICE transferred Mr. D.R. to a detention center in Louisiana. Mr. D.R. continued to have severe stomach pain from the food while he was detained in Louisiana.

38. When Mr. D.R. informed his ICE custodians that he had CAT protection and a valid work permit, ICE agents told him that they did not care. They refused to give him further

information about his detention or what would happen to him. Sometime prior to his removal, ICE agents told Mr. D.R. that they were going to move him. They did not tell him where to.

39. On the night of May 30, 2025, ICE *refouled* Mr. D.R. to Honduras. He arrived at San Pedro Sula airport on the morning of May 31, 2025. Astonishingly, the government did this without even attempting to file a motion to reopen Mr. D.R.'s case.

40. Since May 31, 2025, Mr. D.R. has remained in hiding at his parents' home. Due to the danger he faces in Honduras, he has stayed inside his parents' home, not telling anyone that he is there or going outside.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION:
### WITHHOLDING OF REMOVAL UNDER THE CAT
**Foreign Affairs Reform and Restructuring Act Sec. 2242(a), 112 Stat. 2681–822, codified as note to 8 U.S.C. § 1231; 8 C.F.R. §§ 200.1, 208.16;**

41. Plaintiff incorporates by reference the paragraphs above.

42. The Convention against Torture was implemented in U.S. domestic law through the FARRA Sec. 2242(a) and codified as a note to 8 U.S.C. § 1231. Implementing regulations were promulgated at 8 C.F.R. § 208.16(c)(2), which prohibit removal of individuals who demonstrate "that is more likely than not that [they] would be tortured if removed to the proposed country of removal."

43. As set forth above, Defendants removed Mr. D.R. to Honduras, the country from which he had been granted withholding of removal under the CAT, thus violating the FARRA as codified as a note to 8 U.S.C. § 1231.

44. Defendants' violation of the law is causing Mr. D.R. irreparable harm with each passing day that he spends outside the United States, separated from his partner and grandchildren, in a country he had legal protection from being sent to and where he faces imminent risk to his

life. He is at the mercy of those who have already harmed him in Honduras and remains in hiding at his parents' home.

45. Mr. D.R. asks this court to immediately order Defendants to take all steps to immediately facilitate his return to the United States. *See Lopez-Sorto v. Garland*, 103 F.4th 242, 248–53 (4th Cir. 2024) (redressing wrongful removal by ordering Defendants to facilitate the noncitizen's return); *Noem v. Abrego Garcia*, 145 S. Ct. 1017 (2025) (same); *Zelaya Hernandez v. Noem*, 2:25-cv-3409, ECF No. 13 (D. Md. 2025) (same); *Nken v. Holder*, 556 U.S. 418, 436, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009); *Ramirez v. Sessions*, 887 F.3d 693, 706 (4th Cir. 2018) (ordering Defendants to facilitate noncitizen's return after a successful petition for review); *Singh v. Waters*, 87 F.3d 346, 349 (9th Cir. 1996) (redressing wrongful removal by ordering return of the noncitizen); *see also* U. S. Immigration and Customs Enforcement, Directive 11061.1, Facilitating the Return to the United States of Certain Lawfully Removed Aliens, § 2 (Feb. 24, 2012).

**SECOND CAUSE OF ACTION:**
**ARBITRARY AND CAPRICIOUS AGENCY ACTION UNDER THE**
**ADMINISTRATIVE PROCEDURES ACT, 5 U.S.C. § 706(2)(A)**
**DEVIATION FROM REGULATIONS, 8 C.F.R. §§ 200.1, 208.16, 1208.24.**

46. Plaintiff incorporates by reference the paragraphs above.

47. Courts must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

48. When a federal agency adopts rules that affect the fundamental rights of individuals, including self-imposed policies and processes that limit otherwise-discretionary decisions, the agency is bound to follow its own rules. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 226–27 (1954). A failure to do so violates the Administrative Procedures Act ("APA").

11

49. Defendants have violated their own regulations in removing Mr. D.R. to a country from which he had been granted withholding of removal under the CAT. This is arbitrary, capricious, and contrary to law in violation of the APA.

50. Defendants' violation of the law is causing Mr. D.R. irreparable harm with each passing day that he spends outside the United States, separated from his partner and grandchildren, in a country he had legal protection from being sent to and where he faces imminent risk to his life. He is at the mercy of those who have already harmed him in Honduras.

51. Mr. D.R. asks this court to immediately order Defendants to take all steps to immediately facilitate his return to the United States. *See Lopez-Sorto v. Garland*, 103 F.4th 242, 248–53 (4th Cir. 2024) (redressing wrongful removal by ordering Defendants to facilitate the noncitizen's return); *Noem v. Abrego Garcia*, 145 S. Ct. 1017 (2025) (same); *Zelaya Hernandez v. Noem*, 2:25-cv-3409, ECF No. 13 (D. Md. 2025) (same); *Nken v. Holder*, 556 U.S. 418, 436, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009); *Ramirez v. Sessions*, 887 F.3d 693, 706 (4th Cir. 2018) (ordering Defendants to facilitate noncitizen's return after a successful petition for review); *Singh v. Waters*, 87 F.3d 346, 349 (9th Cir. 1996) (redressing wrongful removal by ordering return of the noncitizen); *see also* U. S. Immigration and Customs Enforcement, Directive 11061.1, Facilitating the Return to the United States of Certain Lawfully Removed Aliens, § 2 (Feb. 24, 2012).

**THIRD CAUSE OF ACTION:**
**ADMINISTRATIVE PROCEDURE ACT**
**5 U.S.C. § 706(2)(A)**

12. Plaintiff incorporates by reference the paragraphs above.

13. The Administrative Procedure Act (APA) provides that courts "shall . . . hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion." 5 U.S.C. § 706(2)(A).

14. Defendants' actions were all of the above: arbitrary, capricious, and an abuse of discretion. In violating the immigration laws of the United States and *refouling* Mr. D.R. to Honduras, Defendants' actions violated the APA. *See Abrego Garcia v. Noem*, 777 F.Supp.3d 501, 517 (D. Md. 2025) (wrongful removal of noncitizen granted withholding of removal under the INA was final agency action that was lawless).

15. Defendants' arbitrary and capricious actions are causing Mr. D.R. irreparable harm with each day he spends fearing for his life in Honduras.

16. Mr. D.R. asks this court to immediately order Defendants to immediately facilitate his return to the United States. *See Lopez-Sorto v. Garland*, 103 F.4th 242, 248–53 (4th Cir. 2024) (redressing wrongful removal by ordering Defendants to facilitate the noncitizen's return); *Noem v. Abrego Garcia*, 145 S. Ct. 1017 (2025) (same); *Zelaya Hernandez v. Noem*, 2:25-cv-3409, ECF No. 13 (D. Md. 2025) (same); *Nken v. Holder*, 556 U.S. 418, 436, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009); *Ramirez v. Sessions*, 887 F.3d 693, 706 (4th Cir. 2018) (ordering Defendants to facilitate noncitizen's return after a successful petition for review); *Singh v. Waters*, 87 F.3d 346, 349 (9th Cir. 1996) (redressing wrongful removal by ordering return of the noncitizen); *see also* U. S. Immigration and Customs Enforcement, Directive 11061.1, Facilitating the Return to the United States of Certain Lawfully Removed Aliens, § 2 (Feb. 24, 2012).

## FOURTH CAUSE OF ACTION: PROCEDURAL DUE PROCESS U.S. CONSTITUTION, AMENDMENT V

17. Plaintiff incorporates by reference the paragraphs above.

18. Mr. D.R. has a procedural due process right not to be removed to Honduras, the country from which he had been granted withholding under the CAT, without an immigration judge first carrying out the procedures set forth in federal regulations. *See Abrego Garcia v. Noem*, 777 F.Supp.3d 501, 517 (D. Md. 2025) (wrongful removal of noncitizen granted withholding of removal under the INA constitutes a violation of his procedural due process rights).

19. Defendants removed Mr. D.R. to Honduras, the country from which he had been granted withholding under the CAT, without formally terminating his grant of withholding of removal or even seeking to file a motion to reopen, thus violating his procedural due process rights under the Fifth Amendment to the U.S. Constitution.

20. Defendant's violation of Mr. D.R.'s due process rights is causing him irreparable harm with each day that he is in the clutches of MS-13 and the Zetas cartel in Honduras and away from his home, family, and job.

21. Mr. D.R. asks this court to immediately order Defendants to take all steps to immediately facilitate his return to the United States. *See Lopez-Sorto v. Garland*, 103 F.4th 242, 248–53 (4th Cir. 2024) (redressing wrongful removal by ordering Defendants to facilitate the noncitizen's return); *Noem v. Abrego Garcia*, 145 S. Ct. 1017 (2025) (same); *Zelaya Hernandez v. Noem*, 2:25-cv-3409, ECF No. 13 (D. Md. 2025) (same); *Nken v. Holder*, 556 U.S. 418, 436, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009); *Ramirez v. Sessions*, 887 F.3d 693, 706 (4th Cir. 2018) (ordering Defendants to facilitate noncitizen's return after a successful petition for review); *Singh v. Waters*, 87 F.3d 346, 349 (9th Cir. 1996) (redressing wrongful removal by ordering return of the noncitizen); *see also* U. S. Immigration and Customs Enforcement, Directive 11061.1, Facilitating the Return to the United States of Certain Lawfully Removed Aliens, § 2 (Feb. 24, 2012).

## FIFTH CAUSE OF ACTION:
## SUBSTANTIVE DUE PROCESS
## U.S. CONSTITUTION, AMENDMENT V

22. Plaintiff incorporates by reference the paragraphs above.

23. Mr. D.R. has a substantive due process right under the Fifth Amendment not to be subjected to government conduct that shocks the conscience. Defendants' conduct, refouling him to a country from which he has legal protection not to be sent to, violates that right.

24. Defendants' conscience-shocking actions are causing Mr. D.R. irreparable harm with each day he spends outside the United States, in a country he is legally protected from being in, facing danger from those who have already caused him harm.

25. Mr. D.R. asks this court to immediately order Defendants to immediately facilitate his return to the United States. *See Lopez-Sorto v. Garland*, 103 F.4th 242, 248–53 (4th Cir. 2024) (redressing wrongful removal by ordering Defendants to facilitate the noncitizen's return); *Noem v. Abrego Garcia*, 145 S. Ct. 1017 (2025) (same); *Zelaya Hernandez v. Noem*, 2:25-cv-3409, ECF No. 13 (D. Md. 2025) (same); *Nken v. Holder*, 556 U.S. 418, 436, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009); *Ramirez v. Sessions*, 887 F.3d 693, 706 (4th Cir. 2018) (ordering Defendants to facilitate noncitizen's return after a successful petition for review); *Singh v. Waters*, 87 F.3d 346, 349 (9th Cir. 1996) (redressing wrongful removal by ordering return of the noncitizen); *see also* U. S. Immigration and Customs Enforcement, Directive 11061.1, Facilitating the Return to the United States of Certain Lawfully Removed Aliens, § 2 (Feb. 24, 2012).

## SIXTH CAUSE OF ACTION:
## WRIT OF MANDAMUS

26. Plaintiff incorporates by reference the paragraphs above.

27. Federal courts are authorized under 28 U.S.C. § 1361 to "compel an officer or employee of the United States or any agency thereof to perform a duty owed" to a plaintiff.

28. Defendants owed a duty to Plaintiff Mr. D.R. not to be refouled to a country he has CAT protection from and to ensure his safe return, to rectify their violation of the law.

29. Defendants' actions are causing Plaintiff irreparable harm with each day that Mr. D.R. is in a country where a judge found he would "more likely than not" be tortured.

30. Mr. D.R. asks this court to immediately compel Defendants to immediately facilitate Mr. D.R.'s return to the United States. *See Lopez-Sorto v. Garland*, 103 F.4th 242, 248–53 (4th Cir. 2024) (redressing wrongful removal by ordering Defendants to facilitate the noncitizen's return); *Noem v. Abrego Garcia*, 145 S. Ct. 1017 (2025) (same); *Zelaya Hernandez v. Noem*, 2:25-cv-3409, ECF No. 13 (D. Md. 2025) (same); *Nken v. Holder*, 556 U.S. 418, 436, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009); *Ramirez v. Sessions*, 887 F.3d 693, 706 (4th Cir. 2018) (ordering Defendants to facilitate noncitizen's return after a successful petition for review); *Singh v. Waters*, 87 F.3d 346, 349 (9th Cir. 1996) (redressing wrongful removal by ordering return of the noncitizen); *see also* U. S. Immigration and Customs Enforcement, Directive 11061.1, Facilitating the Return to the United States of Certain Lawfully Removed Aliens, § 2 (Feb. 24, 2012).

## **PRAYER FOR RELIEF**

Plaintiff prays for judgment against Defendants and respectfully request that this Court enter an order:

a. Declaring that Defendants' actions, as set forth herein, violated the laws of the United States, the Administrative Procedures Act, and the Fifth Amendment to the Constitution;

b.  Ordering Defendants to take all steps to immediately facilitate the return of Plaintiff Mr. D.R. to the United States;

c.  Ordering that Defendants are enjoined from detaining Plaintiff Mr. D.R. upon return to the United States and/or pursuing third country removal;

d.  Granting Plaintiff costs and fees under the Equal Access to Justice Act; and

e.  Grant any other further relief in law and equity that justice may require.

Dated: November 19, 2025                    Respectfully submitted,

*/s/ Susanna Booth*
Susanna Booth (D. Md. Bar No. 31657)
Amica Center for Immigrant Rights
1025 Connecticut Ave. NW, Suite 701
Washington, DC 20036
(571) 599-9953
susanna@amicacenter.org

Amelia Dagen (D.C. Bar No. 90004838)*
Amica Center for Immigrant Rights
1025 Connecticut Ave. NW, Suite 701
Washington, DC 20036
(202) 998-3105
amelia@amicacenter.org

Adina Appelbaum (VA Bar No. 88974)*
Amica Center for Immigrant Rights
1025 Connecticut Ave. NW, Suite 701
Washington, DC 20036
(202) 899-1412
adina@amicacenter.org

**pro hac vice* forthcoming

*Pro bono counsel for Plaintiff*

## LIST OF EXHIBITS

Exhibit A        Declaration of O.D.R.

Exhibit B        Declaration of R.B.M.M.

Exhibit C        Decision of the Immigration Judge [redacted]